(63 App. Div. 54.)

## BRINTNALL v. RICE.

(Supreme Court, Appellate Division, First Department. July 9, 1901.)

LIMITATIONS—NEW PROMISE—SUFFICIENCY.

> Where plaintiff made an accommodation note to enable defendant to obtain a loan, and pledged certain personal property to secure such note, subsequently paying a portion of it to regain possession of the pledged property, a letter of defendant, saying that he would see that plaintiff should be at no loss in the transaction, was a sufficient acknowledgment of indebtedness and a promise to pay to prevent the running of limitations.

> Van Brunt, P. J., and McLaughlin, J., dissenting.

Appeal from trial term.

Action by Norman Y. Brintnall against Samuel M. Rice. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

E. A. Alexander, for appellant.

A. W. Venino, for respondent.

INGRAHAM, J. The defendant, being the owner of 100 barrels of whisky, and desiring to obtain a loan of money, requested the plaintiff to execute a promissory note, which would enable the defendant to obtain the loan, upon depositing the whisky as collateral security, from one John Lyons, a liquor dealer doing business in Boston. The plaintiff executed his promissory note to the order of the defendant, and delivered the same to him, who delivered it to Lyons, and obtained the loan. The defendant gave the plaintiff a receipt for the note, which recited that it was received in payment of 100 barrels of Brintnall pure rye whisky, and annexed to the receipt was a clause, "If Brintnall so desires, he can return the 100 barrels, and I will take care of the note." Upon the evidence and the finding of the trial judge, it must be assumed upon this appeal that the transaction was simply an arrangement by which the plaintiff gave to the defendant his accommodation note to enable the defendant to obtain a loan of money with the whisky as security. This note, when due, seems to have been taken up by another note given by the plaintiff to the defendant, which was also discounted by Lyons, who retained the same 100 barrels of whisky as collateral security; but when the second note was delivered to Lyons there were added 25 barrels of other whisky, belonging to the plaintiff, to be held as additional security. When this second note was given, the defendant gave to the plaintiff another receipt, which receipted for the note for $2,500, and also stated that the additional whisky deposited as collateral security for the payment of the note was to be returned to the plaintiff when the note was paid. The receipt then contained the following: "The part of agreement of September 15, 1890, wherein I agree to pay the note, and allow Brintnall to ret. the 100 bbls. of pure rye whisky, is still in force, and a part

of this agreement to the amount of $2,344.38, with interest, paid and to be paid." When the second note became due, in May, it was not paid. The plaintiff never received the proceeds of either of the notes, and, after the second one became due, the plaintiff paid $500 to Lyons, in order to have returned to him the 25 barrels of whisky which he had deposited with Lyons as additional security for the note given for the defendant's accommodation. And it is to recover this $500 that this action is brought.

This $500 was paid by the plaintiff on August 26, 1891, and upon these facts it would seem clear that the defendant was at that time indebted to the plaintiff in that sum. The principal defense was the statute of limitations, and, in order to take the case out of the statute, certain letters that passed between the plaintiff and the defendant were received in evidence. The action was commenced on the 4th of October, 1898, and the statute has run unless the plaintiff can produce an acknowledgment of the indebtedness or a promise to pay the debt within six years of the commencement of the action. Considering the relation which the plaintiff bore to this transaction; that he advanced his note to enable the defendant to borrow money of Lyons; that when that note had become due, and was not paid, he had given a new note, and to insure the discount of the new note he had advanced 25 barrels of his own whisky to be held as additional collateral; that when the second note became due, and the defendant had not paid it, he had been compelled to pay to Lyons $500 to obtain possession of his property, which $500 was credited on account of the note, which, by the agreement between the plaintiff and the defendant, the defendant was to pay; that the plaintiff had been constantly endeavoring to obtain the payment of this $500, and had refused to have anything further to do with the transaction until it was paid,—the letter written by the defendant dated December 21, 1892, must be considered an express promise to pay this sum. He there says: "Notwithstanding that you have done some very foolish talking, entirely uncalled for, I will see that you will be at no loss in the Lyons transaction." It was said in Shaw v. Lambert, 14 App. Div. 267, 43 N. Y. Supp. 472:

"There must be, however, an acknowledgment of a debt, or a promise to pay a debt; and in dealing with each particular case what has to be ascertained is the intention of the writer of the instrument upon which is based the acknowledgment of the existing liability, or the new promise to pay the debt. Was it his intention to acknowledge that an obligation or debt existed, or was it his intention to promise to pay a demand made upon him? The writing must show that it was the intention of the writer to either acknowledge the debt or promise to pay it."

The defendant was bound to pay the note held by Lyons, and upon his default the plaintiff had paid $500 on account thereof. The plaintiff then endeavored to obtain from the defendant the repayment of this $500, and when the defendant wrote, "I will see that you will be at no loss in the Lyons transaction," it could only have related to a repayment to the plaintiff of the money that he had paid to Lyons on account of the note, which, as between the plaintiff

and the defendant, the defendant was bound to pay, and which payment was essential in order to prevent the plaintiff from sustaining loss. In the case of Deposit Co. v. Wead, 58 App. Div. 493, 69 N. Y. Supp. 518, we applied the same principle, but held that in that case the letter of the defendant was not a promise to pay. There is no uncertainty as to the rule. The only question is whether the writing relied on to take the case out of the statute of limitations is sufficient for that purpose. To be sufficient, it must acknowledge the existence of the liability, or contain a promise to pay. In this case it seems to me that there was contained in this letter such a promise to pay the $500. The promise in this case was not conditional, as it was in the case of Tebo v. Robinson, 100 N. Y. 27, 2 N. E. 383, and I cannot see that that case has anything to do with this question. The question is as to what was intended by the defendant when he wrote this letter of December 21, 1892, and it seems to me that he certainly intended to promise to pay to the defendant the amount that plaintiff had been compelled to pay on the Lyons transaction, which was necessary to prevent the plaintiff from sustaining loss.

The judgment appealed from should be affirmed, with costs.

O'BRIEN and HATCH, JJ., concur. VAN BRUNT, P. J., dissents.

McLAUGHLIN, J. (dissenting). The cause of action, if there is one, arose on the 26th of August, 1891,—the time when the plaintiff paid out $500 to secure the return of his collateral. The action was not commenced until the 4th of October, 1898, and, as conceded in the prevailing opinion, the statute of limitations had then run against the claim, unless "the plaintiff can produce an acknowledgment of the indebtedness, or a promise to pay the debt, within six years of the commencement of the action." There is nothing in the record, so far as I have been able to discover, in writing, by which the defendant recognizes the claim set up in the complaint as binding upon him, or in which he promises to pay the same. Unless there be such writing, then, of course, the statute of limitations is a complete defense, and, it having been pleaded, the judgment must be reversed. A writing, to take a case out of the statute, must show that it was the intention of the person by whom it was signed, not only to acknowledge the validity of the debt, but it must contain a distinct and unequivocal promise to pay the same. Fletcher v. Daniels, 52 App. Div. 67, 64 N. Y. Supp. 861; Shaw v. Lambert, 14 App. Div. 267, 43 N. Y. Supp. 470. Here, there is no such writing. The facts, in brief, are as follows: John Lyons held 100 barrels of Golden Harvest whisky and 25 barrels of Small Grain whisky as collateral security for the payment of a note made by the plaintiff, payable to the order of the defendant four months from date, for the sum of $2,323.61, upon which, before maturity, the plaintiff paid $500 to secure the return to him of 25 barrels of the whisky. About a year after this payment, Lyons delivered to the plaintiff a statement of account, by which he charged the plaintiff with the prin-

cipal of the original note, and gave him credit for the $500 paid, and also for 2,309.72 gallons of whisky at 40 cents,—$923.88,—leaving a balance of $1,076.28. From this statement it appears that the plaintiff was given credit by Lyons for the amount which had been paid, and also for a portion of the remaining collateral. All that the correspondence between the parties shows is an effort to arrange for a sale of the balance of the collateral for the mutual benefit of all, to the end that Lyons might receive the amount of the loan, and the plaintiff, if possible, made good for the payment of the $500 before mentioned. Nowhere in the correspondence is there an acknowledgment on the part of the defendant that the amount due is for him to pay, nor is there any promise on his part to pay anything to the plaintiff. It is true that in the letter bearing date the 26th of August, 1892, he wrote the plaintiff:

"I did agree to take care of your first note, which I carried out. I did not agree to take care of it for life. * * * I don't think there will be any loss, so there is no use crying before you are hurt. Just as soon as I get to Boston,—I am coming,—I will arrange to have a set-to with you."

On October 4, 1892, the plaintiff wrote the defendant:

"Yours of yesterday at hand. This is all satisfactory, only you don't say anything about the $500 paid by me to Lyons;" to which the defendant replied: "I have yours of yesterday. It appears to me the $500 you speak of was advanced on the 25 Small Grain, 88, although I have not the statement before me, but I recollect that Lyons advanced forty cents on the Golden Harvest; so, if you will accept draft on the basis of forty cents on the 25 barrels, it will be all right when I settle the matter with Mr. L."

On the following day the plaintiff wrote the defendant as follows:

"Yours received. As I wrote you, I will not pay for 25 barrels of the Harvest unless I get the $500, with interest, allowed. All other matters connected with the transaction can be settled when you come on, and, unless it is so arranged, I expect Lyons will commence a suit of some kind; but I think he will find there are two sides to this business, and, on the whole, if you have whisky enough to pay in full all expenses, I think it would be best for you to devote time enough to arrange it at once."

To this the defendant replied:

"I have yours of yesterday. I have laid out the tax money on this whisky, and have done all I can to keep matters nice and smooth. If you don't care to be out of pocket until I can arrange this matter for you, well and good. I don't see now how there can be any ultimate loss. You can facilitate matters by taking 25 barrels, and paying for them now what they are worth on the basis of forty cents. You can use the whisky advantageously. If you don't want to do even that much, all right. I can't see how you run any further risk in taking 25 barrels and paying for them. It would bring about matters to a close. It is for you to say whether you want to do that much or not."

These letters, it will be noticed, do not contain any acknowledgment by the defendant of his liability to pay the $500. Not only that, but, when the matter is called to his attention, they show an intention, on his part at least, not to assume the liability for the payment. On December 21, 1892, the defendant wrote the plaintiff,

—and it is upon this letter that it is claimed a promise was made sufficient to take the case out of the statute:

"Owing to financial excitement here, I could not get away, but am liable to be over most any day between now and New Year,—the first day I can go. Notwithstanding that you have done some very foolish talking, entirely uncalled for, I will see that you will be at no loss in the Lyons transaction."

When this letter is read in connection with the other letters, it is perfectly clear that there was no intention on the part of the writer to acknowledge that he was legally obligated to pay this debt, nor was there any promise on his part to personally pay it. All that he said was that he would see that plaintiff was at no loss; that is, he would induce Lyons to pay. Each particular case, of course, must be determined by the facts presented, and, when such facts are presented, the real question always is, did the party intend to acknowledge that there was a demand against him, and that it was his intention to pay it? As I read this record, the defendant did neither. For that reason, I am unable to concur in the prevailing opinion.

I think the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.